## THE INHABITANTS OF SPRINGFIELD *vs.* THE CONNECTICUT RIVER RAILROAD COMPANY.

Where a railroad corporation, under a general grant of power, lay out and construct their road over and along a public highway, the town, within which such highway is situated, may proceed in equity against the corporation in this court, under its general jurisdiction in matters of nuisance, in order to ascertain whether such laying out and construction is or is not within the power granted to the corporation; and it is immaterial, in this respect, whether the way in question be a highway, properly so called, or a town way.

The fourth section of the act of 1849, *c.* 222, which gives county commissioners jurisdiction of all questions touching obstructions to highways by railroads, if it does not relate exclusively to the raising or lowering of such ways when crossed by a railroad, which the court did not decide, has no effect to deprive this court of its jurisdiction of a case commenced therein before the passing of the act.

Where a town was divided, and a part of it established as a new town, after the commencement of a suit in equity by such town against a railroad corporation, for a nuisance to a public highway, which, upon the division, fell within the limits of the new town, and the act for the division provided that such suit should be assumed, and might be prosecuted to final judgment, by the new town, at their expense and for their benefit, but in the name of the old town; it was held, that the division did not operate to vacate or otherwise affect the suit.

An act of the legislature, which authorizes the construction of a railroad between certain *termini,* without prescribing its precise course and direction, does not *prima facie* confer power to lay out the road on and along an existing public highway; but it is competent to the legislature to grant such authority, either by express words, or by necessary implication; and such implication may result either from the language of the act, or from its being shown, by an application of the act to the subject matter, that the railroad cannot, by reasonable intendment, be laid in any other line.

THIS was a bill in equity, in which the plaintiffs set forth, that so much of Front street, in the village of Cabotville in the town of Springfield, as extended from the southerly end of Cabotville bridge westerly to the north end of Cabot street, was established by the county commissioners, for the county of Hampden, as a highway, in October, 1834; that so much of Front street as extended from the north end of Cabot street, westerly to Dwight street, was laid out by the selectmen and accepted by the town of Springfield, and the same established as a town way in April, 1841; that Front street, so established as a county and town way, had ever since been and still was used by the citizens of Springfield and the public generally as a highway, and that several

streets, containing a large population, and much travelled over, opened into Front street, and that the same was constantly passed and repassed by a great amount of travel, consisting of foot passengers, carriages, teams, &c.; that that part of the Connecticut River Railroad Corporation, which was then known as the Northampton and Springfield Railroad Corporation, did, in the year 1845, illegally and without right, lay down and construct, through the entire length of Front street, a portion of their track, being a part of the branch extending from the main track to the villages of Cabotville and Chicopee Falls; that the track through Front street had ever since been and still was used by the defendants, and the defendants were daily running a great number of trains of cars, drawn by a locomotive engine at a great rate of speed, upon and over said track; that the defendants by so doing rendered the travel through Front street unsafe and inconvenient, and greatly obstructed and incumbered the same, and constantly endangered the lives and property of all persons having a right and wishing to pass through said street, and that such illegal obstructions constituted a grievous and insufferable public nuisance; that the defendants thereby rendered the plaintiffs constantly liable for double damages for all injuries to persons and property caused by such obstructions, while the plaintiffs could only recover of the defendants the actual damage so caused, whenever the plaintiffs might be compelled to pay double damages; that the plaintiffs had requested the defendants to remove their track, or to erect suitable barriers by the side of the same, and to give the plaintiffs sufficient indemnity against all damages caused to the plaintiffs by said track, and the use thereof; and that the defendants entirely neglected and refused so to do. The plaintiffs, therefore, prayed that the defendants might be restrained by injunction from longer running their cars and locomotive engines upon and over their track through Front street.

The defendants, in their answer, admitted the use of Front street as a highway, and the laying out and construction of their branch track along said street; but alleged that it was

mostly on the northerly side thereof, aside from the worked and travelled part, and that the same was daily used for running cars drawn by a locomotive engine at a moderate rate of speed; and denied that they did the same illegally and without right; or that they had thereby rendered the travel through Front street unsafe and inconvenient, and obstructed and incumbered said street, and endangered the lives and property of persons having a right and wishing to pass through said street; or that they had thereby created a nuisance, or rendered the plaintiffs liable for double damages; but they admitted the request as to the removal of said track, and as to barriers and indemnity: And they further alleged, that in the location and construction of said track they had complied with the requisitions of *St.* 1845, *c.* 170, § 1; that it was necessary and expedient to adopt the location complained of, and there to construct and maintain their road; and that as to such location, construction and maintaining, and the running of cars and engines, and all other matters complained of, they had acted under the authority granted to them by the legislature, and in conformity with the laws of the commonwealth.

The plaintiffs filed a general replication.

The act of 1848, *c.* 233, passed after the filing of the bill, in this case, but previous to the answer, to incorporate a part of the town of Springfield, including the highway in question, into a separate town, by the name of Chicopee, provided (§ 3) that "The suit in equity, now pending in favor of said town of Springfield, against the Connecticut River Railroad Company, shall be assumed, and may be prosecuted to final judgment, by said town of Chicopee, in the name of said town of Springfield, at the expense and for the benefit of said town of Chicopee."

By the act of 1845, *c.* 170, § 1, under which the defendants claimed authority to lay out and construct the railroad in question, in the manner complained of, they were authorized to construct and open for use, a branch railroad, from the main track of their road, in the village of Cabotville, to and near the mills in said village, passing up the south bank of

6*

Chicopee river, near the same, and thence extending up said river into the Chicopee Falls village. The third section declares, that in such construction, the defendants may exercise all the powers and privileges, and shall be subject to all the duties, restrictions, and liabilities, set forth in the general laws relating to corporations.

*G. Walker*, for the plaintiffs.

The act of 1845, *c.* 170, gives no express authority to the defendants to occupy a highway; nor do the circumstances imply any such authority. It does not appear that the road could not be constructed any where else. See *Thacher* v. *Dartmouth Bridge Co.* 18 Pick. 501; *Boston Water Power Co.* v. *Boston & Worcester Railroad Corp.* 23 Pick. 360; *Commonwealth* v. *Coombs*, 2 Mass. 489; *Wales* v. *Stetson*, 2 Mass. 143; *Commonwealth* v. *Stevens*, 10 Pick. 247; *West Boston Bridge* v. *Middlesex*, 10 Pick. 270; *Wellington* v. *Middlesex*, 16 Pick. 87, 89, 104; *Kean* v. *Stetson*, 5 Pick. 492; *Commonwealth* v. *Charlestown*, 1 Pick. 180; *Arundel* v. *McCulloch*, 10 Mass. 70. The defendants have no such authority under the general laws of the state, in the absence of any specific authority. *Boston Water Power Co.* v. *Boston & Worcester Railroad Corp.* 23 Pick. 360, 398; *St.* 1837, *c.* 185, §§ 4, 5. The act of 1846, *c.* 271, does not apply. The town is liable for double damages to a party injured. *Currier* v. *Lowell*, 16 Pick. 170. But the corporation is only liable for single damages to the town. *Lowell* v. *Boston & Lowell Railroad Co.* 23 Pick. 24.

*C. P. Huntington*, for the defendants.

The defendants were not only authorized, but required, to build the road where it is located. *St.* 1845, *c.* 170, § 1. Rev. Sts. *c.* 39, §§ 46, 47, 48. To the point, that under a general power, highways may be obstructed, see *Newburyport Turnpike Co.* v. *Eastern Railroad Co.* 23 Pick. 326; *Lowell* v. *Boston & Lowell Railroad Co.* 23 Pick. 24; *Wales* v. *Stetson*, 2 Mass. 143; *Boston Water Power Co.* v. *Boston & Worcester Railroad Corp.* 23 Pick. 360; *Commonwealth* v. *Worcester Turnpike Co.* 3 Pick. 327; *Coomes* v. *Burt*, 22 Pick. 422; Roscoe, Cr. Ev. 516, 742; *The King* v. *Pease*,

4 B. & Ad. 30 ; *The King* v. *Ouze Bank Commissioners,* 3. A. & E. 544.

The act of 1849, *c.* 222, § 4, has ousted the jurisdiction of this court, except as a court of appeal ; and has a retroactive operation. *Springfield* v. *Hampden,* 6 Pick. 501. And see *St.* 1849, *c.* 159 ; *Bemis* v. *Upham,* 13 Pick. 169.

*R. A. Chapman,* also for the defendants.

The bill states no case for an injunction ; it alleges a public nuisance, which is no ground for maintaining this suit, without showing a special private injury. *Bigelow* v. *Hartford Bridge Co.* 14 Conn. 565 ; 3 Dan. Ch. Pr. 1858 ; *Rowe* v. *Granite Bridge Corp.* 21 Pick. 344 ; *Stetson* v. *Faxon,* 19 Pick. 147, 154. The liability to double damages is not a ground of such special injury, being too contingent. And the injury should be one which cannot be compensated in damages. *Dana* v. *Valentine,* 5 Met. 8 ; *Ingraham* v. *Dunnell,* 5 Met. 118 ; *Atkins* v. *Chilson,* 7 Met. 398.

This proceeding is vacated by the passing of the act incorporating the town of Chicopee. *St.* 1848, *c.* 233.

*H. Morris* replied. By the third section of the act referred to, this suit is expressly saved.

SHAW, C. J. This is a bill in equity, brought to enjoin the defendants from maintaining a railroad and running cars thereon, upon and over a public highway in Springfield, on the ground, that such maintenance of the railroad is unauthorized, and constitutes a nuisance. It presents a very important question ; one, which, in the great multiplication of railroads, is likely to affect deeply the interests of many parts of the commonwealth, and which has not yet been decided.

A preliminary objection was taken, that the inhabitants of a town, in their corporate capacity, have no such interest in the preservation and protection of the highways and town ways, within their limits, as will warrant them in applying to this court, for the exercise of its jurisdiction, in case of nuisances, to restrain and prevent such nuisance. We have not examined the subject very thoroughly, but we are inclined to think, that as the town is responsible fo. the construction and amendment of highways and town ways, and

for damages to travellers for losses occasioned by obstructions and defects, they have a right to invoke the equity power vested in this court, in cases of nuisance, to determine whether such a use of the ways, as is claimed by the defendants in the present case, is or is not a justifiable act under the powers granted them.

It is further contended, that the original jurisdiction of this court, if it ever existed, is taken away by the statute of 1849, *c.* 222, by which (§ 4) the original jurisdiction of all questions touching obstructions to turnpikes, highways, or town ways, caused by the construction or operation of railroads, is vested in the county commissioners. This provision, taken in connection with the preceding section, we think, relates to the raising or lowering of bridges, ways or the like, when crossed by a railroad, so as to adapt them to each other, and to render such crossings safe; and does not vest in the commissioners the jurisdiction of deciding, whether the railroad is laid down or located in conformity with the grant of power given in the act of incorporation. But whether such be the true construction of the act or not, it would not affect this case, which was commenced long before that act passed; and the jurisdiction having once attached, it will not be held to be taken away by a subsequent act, without express words, nor then if vested rights would thereby be affected.

The fact, that since the suit was commenced, the town of Springfield has been divided, and that the place where the nuisance is alleged to exist falls within the new town of Chicopee, has no effect to vacate the suit; because the act of incorporation contains a saving clause, which is sufficient to avoid any such effect.

We are then brought to the main question, namely, whether the defendants had authority, by the act of 1845, *c.* 170, § 1, granting them the right to build this branch, to build it over and along a public way previously established It is stated and admitted, that Front street, in Cabotville, is partly a highway laid out and established by the county commissioners, and partly a town way laid out by the selectmen, and the laying out ratified by the vote of the

town. These two modes of establishing ways are both legal; and though one is called a highway, and the other a town way, yet, for most purposes, both are regarded as public ways, for obstructing which, any party is liable to indictment as for a nuisance, and for damage in consequence of any defect in which the town is liable to the sufferer. For all purposes of this inquiry, therefore, there is no distinction between them.

As the giving of authority to build and maintain a railroad is the grant of a right to take private property for a public use, and to deal with property appropriated to other public easements and uses, it is manifestly a high exercise of the sovereign right of eminent domain, and can only be effected by the clear and unequivocal authority of the legislature, who are constituted the judges of what the public good requires.

It is somewhat remarkable, that in a matter so deeply affecting private rights and interests, the precise location or line of railroad, on the ground, is not fixed by the act granting the power, nor is it provided, that it shall be fixed by any board of public officers, who may be supposed to act impartially. In laying out highways, the precise course of location is fixed by the county commissioners, formerly the court of sessions, a public body of disinterested officers, supposed to act as impartial arbitrators between the public and individual proprietors.

But in railroads, the authority to the corporation is, to locate, construct and complete a railroad within certain *termini,* giving the general direction, but leaving the precise location to be determined, not by the county commissioners, but by the company. The corporation must file their location with the commissioners within one year, defining the courses, distances and boundaries, but the commissioners have no power of prescribing or altering it. Rev. Sts. *c.* 39, § 75. So, after having made a location, the corporation may vary it, and take other lands within the limits prescribed by their act of incorporation, and file a location of such variations. Rev. Sts. *c.* 39 § 73. And, on the petition of

any railroad corporation, the commissioners may authorize an original location, or an existing location to be altered, without the limits prescribed by the charter of such corporation. Rev. Sts. *c.* 39, § 74. Considering how large the powers are, which are thus vested in railroad corporations, the court are of opinion, that they ought to be construed with a good degree of strictness, and not enlarged by construction.

The authority, under which the defendants claim to have located and laid out the railroad in question, is found in the act of 1845, *c.* 170, which was passed in addition to the act of 1842, *c.* 41, by which this company was incorporated. The act of 1845 provides (§ 1), that the company may construct and open for use a branch railroad from the main track of the road, in Cabotville, to and near the mills in said village, passing up the south bank of Chicopee river, near the same, and thence extending up said river to the Chicopee Falls village ; the location of that part of the branch now in question, from the main road to the mills in Cabotville, to be filed in one year from the passage of the act, and that to Chicopee Falls village in five years. The act further provides (§ 3), that said corporation, in the construction of their railroad and branch, shall have all the powers and privileges, and be subject to all the duties, restrictions and liabilities, set forth in the Rev. Sts. *c.* 44, and in that part of *c.* 39 which relates to railroads.

It is the common case of an act, authorizing the location and construction of a railroad between *termini*, one of which, the junction, as the *terminus a quo*, is fixed, and the other, the *terminus ad quem*, " to and near the mills in Cabotville : " and the course or line is no more exactly designated, than by the terms, " passing up the south bank of Chicopee river, and near the same," and thence extending up said river to Chicopee Falls village. The beautiful and apparently accurate survey and plan of a part of Cabotville, and of the river, the streets, and the track of the railroad, exhibit all these localities to great advantage, and present the question at a single glance.

As no company or persons have authority to lay out a railroad, except so far as such power is conferred by the legislature, the court are of opinion, that by a grant of power by a legislative act to lay out a railroad between certain *termini*, where the precise course and direction are not prescribed, but are left to the corporation to be located between the *termini*, no authority is given *prima facie* to lay such railroad on and along an existing public highway longitudinally, or in other words, to take the road bed of such highway as the track of their railroad. The two uses are almost, if not wholly inconsistent with each other; so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated. The whole course of legislation, on the subject of railroads, is opposed to such a construction. The crossing of public highways by railroads is obviously necessary, and of course warranted; and numerous provisions are industriously made, to regulate such crossings, by determining when they shall be on the same and when on different levels, in order to avoid collision; and when on the same level, what gates, fences and barriers shall be made, and what guards shall be kept to insure safety. Had it been intended that railroad companies, under a general grant, should have power to lay a railroad over a highway longitudinally, which ordinarily is not necessary, we think that would have been done in express terms, accompanied with full legislative provisions for maintaining such barriers and modes of separation, as would tend to make the use of the same road, for both modes of travel, consistent with the safety of travellers on both. The absence of any such provision affords a strong inference, that, under general terms, it was not intended that such a power should be given.

But the court are of opinion, that it is competent for the legislature, under the right of eminent domain, to grant such an authority. The power of eminent domain is a high prerogative of sovereignty, founded upon public exigency, according to the maxim: *Salus reipublicæ lex suprema est*, to which all minor considerations must yield, and which can

only be limited by such exigency.  The grant of land for one public use must yield to that of another more urgent. Land appropriated to a public walk or training field may, in case of war, be required for a citadel, when it is the only ground, which, in a military point of view, will command all the defences of a place, in case of hostile attack.  *Chesapeake & Ohio Canal Co.* v. *Baltimore & Ohio Railroad Co.* 4 Gill & Johns. 1; *Boston Water Power Co.* v. *Boston & Worcester Railroad Corp.* 23 Pick. 360; *Wellington* v. *Middlesex,* 16 Pick. 87, 100.

But, when it is the intention of the legislature to grant a power to take land already appropriated to another public use, such intention must be shown by express words, or by necessary implication.  There may be such a necessary implication.  Every grant of power is intended to be efficacious and beneficial, and to accomplish its declared object; and carries with it such incidental powers as are requisite to its exercise.  If, then, the exercise of the power granted draws after it a necessary consequence, the law contemplates and sanctions that consequence.  Take the familiar case of the notch of the White mountains, a very narrow gorge, which affords the only practicable passage, for many miles, through that mountain range.  A turnpike road through it has already been granted.  Suppose the gorge not wide enough to accommodate another road, but the legislature of New Hampshire, in order to accommodate a great line of public travel, should grant power to lay a railroad on that line; they would by necessary implication grant a power to take some portion of the road bed of the turnpike.

In the present case, it is manifest, that there are no words in the act of 1845 which give the defendants authority to locate and construct their railroad over Front street, where it was actually laid, or over any other highway in Cabotville; and if they had the power, it must be derived from necessary implication, though no such implication appears on the face of the act.  If it exist, it must arise from the application of the act to the subject matter, so that the railroad could not, by reasonable intendment, be laid in any other line.  The

grant of a right is, by reasonable construction, a grant of power to do all the acts reasonably necessary to its enjoyment. It is not an absolute or physical necessity, absolutely preventing its being laid elsewhere; but if, to the minds of reasonable men, conversant with the subject, another line could have been adopted between the *termini*, without taking the highway, reasonably sufficient to accommodate all the interests concerned, and to accomplish the objects for which the grant was made, then there was no such necessity as to warrant the presumption that the legislature intended to authorize the taking of the highway.

Whether the laying of this railroad, on and over Front street, was necessary, that is, reasonably necessary, as above explained, in order to accomplish the object contemplated by the legislature, depends upon the application of the act to the localities; and this warrants and requires evidence *aliunde* to establish the facts. It is a fit case, therefore, in our judgment, to be referred to three commissioners, of competent skill and experience in such subjects, to examine the whole subject, and to consider and report: —

Whether under the grant of an authority to the defendants to construct and open for use a branch railroad from the junction or main track of their road in the village of Cabotville, to and near the mills in said village, passing up the south bank of Chicopee river, near the same, and thence extending up said river into the Chicopee Falls village, it was, by fair and reasonable intendment, necessary to lay and construct the same upon and along Front street, or either of the public ways in Cabotville or not; and as incident to this inquiry, to consider, whether, by such fair and reasonable intendment, the said railroad could or could not have been laid out and constructed, 1st, between Front street and the canal; or 2d, over the canal; or 3d, between the canal and the mills; or 4th, between the mills and the bank of Chicopee river; considering for this purpose, the street, the canals, the mills, the land, and the entire space between the street and Chicopee river, as they were in March, 1845, when the act was passed by the legislature:

Also, if they should be of opinion, that it was necessary to lay the railroad over Front street, where it now is, whether any, and if any, what further fences, gates, barriers, guards, or other precautions are required by the act of 1846, *c.* 271, in order to render it safe and convenient for the general travel, to pass through, over and across that street.

*Commissioners appointed accordingly.*