WESTERN NORTH CAROLINA RAILROAD COMPANY v. GEORGIA & NORTH CAROLINA RAILROAD COMPANY.

### *Injunction.*

An injunction will not be granted upon the facts of this case, as no injury will result to the plaintiff by a denial of the application.

(*Mfg. Co.* v. *Fox*, 4 Ired. Eq., 61; *Frizzle* v. *Patrick*, 6 Jones' Eq., 354; *Thompson* v. *McNair*, Phil. Eq., 121; *Dunkart* v. *Rinehart*, and cases cited, 87 N. C., 224; *Peebles* v. *Com'rs*, 82 N. C., 385; *R. R. Co.* v. *Com'rs, Ib.*, 259, cited and approved).

MOTION for injunction in an action pending in WAKE Superior Court, heard at Chambers in October, 1882, before *McKoy, J.*

The plaintiffs allege that under the provisions of the act incorporating the Western Division of the Western North Carolina Railroad Company, to which the plaintiff company under the name of the Western North Carolina Railroad Company has succeeded, and other acts of legislation relating thereto, a route westward from Asheville towards the Tennessee boundary, passing over a locality known as "Red Marble Gap," has been surveyed and located, and thus an inchoate prior right to construct the railroad thereon acquired, to become perfect upon payment of damages to be assessed for the appropriation of the land. They further allege that the defendant company, the Georgia and North Carolina Railroad Company, organized and operating also

under the laws of the state, has taken possession of a portion of the land traversed by the line of the projected road, in process of construction by the plaintiff, and claiming a right to locate its road thereon, under a deed or license from the proprietor of the land, is engaged with a large force of workmen in making excavations and levelling, with intent to put its superstructure thereon for the rail track when filled for the purpose.

The object of the action is to have the defendant company, its officers and agents perpetually enjoined from interfering in any way with the land thus previously taken and appropriated to the use of the plaintiff company, and upon a preliminary application to the judge on July 2d, 1882, he decided to issue a restraining order to be in force until it could be heard, and directed that cause be shown by the defendant, at Raleigh, on August 21st, thereafter (the hearing having been postponed on that day to October 11th) why the injunction asked should not be granted.

The parties appeared and filed numerous affidavits and exhibits, those of the parties in the form of complaint and answer being used as such, bearing generally upon the conflicting claims asserted by each to locate its line of railway over the disputed territory, to which it is not necessary to advert in detail.

His Honor upon the evidence, after finding the facts, ordered and adjudged that the Georgia & North Carolina Railroad Company, and its officers, agents and employees be enjoined till the hearing of the cause, from occupying, working or using, as a road-bed or track, any part of "Red Marble Gap" on the surface that would be necessary to put the centre of their track where the excavation is made, at least 15 feet from the centre of the track of the Western North Carolina Railroad Company, when run on the line with which it has entered the gap, and heretofore been marked and surveyed, and so as to make its slopes sufficient and not less than 25 feet from the centre of the gap, unless it should be made to appear to the court hereafter, that owing to the nature of the gap it may be necessary to modify this order so as to allow the centres of the two tracks to approach nearer to

each other, and an injunction conforming to the judgment was directed to issue, on the plaintiff company's filing a bond in the sum of $2,000, intended, as we suppose, though such is not its declared object, to provide an indemnity for the defendant company against any damages it may sustain in consequence of the wrongful suspension of its operations at this point. From this ruling the defendants appeal.

*Messrs. D. Schenck* and *Reade, Busbee & Busbee,* for plaintiff.
*Messrs. Battle & Mordecai,* for defendant.

SMITH, C. J., after stating the above. From the evidence it seems that the work of construction on the plaintiffs' western extension of its road has not reached by many miles, nor is it likely to reach for a long time to come, the locality of the gap where the defendant company is at work, and whose work is interrupted by the restraining order, nor is the possession of it required for any present use of the plaintiffs.

Moreover, if we understand the operations there in progress, preparing the surface for the laying of a track, instead of being injurious, in case of an ultimate adjudication in favor of the plaintiffs' complaint, it will ensue to their advantage, because it is in part the very same work the plaintiff company would have to do in preparation for laying its wider track. If it were to some extent an injury, the damage would not be irreparable, since the proved solvency of the defendant company would insure adequate compensation.

In the other aspect of the case, the effect of the restraining order upon the defendant company, should its claim be held to be superior to the other, might be very injurious in interrupting the prosecution of another public enterprise, and entailing damages for which money might be a very inadequate compensation.

So then, the denial of the injunction *now* cannot hurt the

plaintiff company, for its own work is not interfered with and its engineering surveys and estimates go on without interruption, and when an actual obstruction is met, if it occurs before the final trial of the case upon its merits, it will then be time for the plaintiffs to ask for the exercise of the restraining power of the court in order that its work may go on. It is at least unnecessary, if not premature, to ask for it so long in advance. If the purpose of asking for the intermediate injunction is to obtain the opinion of the court upon the question of priority of right to lay the track upon and over the gap, of the contesting companies, we should refrain from giving it, since the motion is heard upon *ex-parte* evidence, without those safe guards which the law has provided, in requiring in most cases the personal presence of the witness and affording, in all, opportunities for cross-examination, conditions so important to the development of truth and detection of falsehood in trials before a jury, and under the rules that govern them.

We only proceed in the inquiry so far as to see that there is a reasonable claim and right sufficient to call for and authorize the exercise of the power possessed, to take care of a disputed fund in danger of being lost or impaired, or to prevent an irremediable threatened injury.

The facts of the present application do not bring it within the principle upon which a court of equity acts in affording such relief, nor do they warrant our intervention in the controversy at this stage of its progress, and we leave it, where it should be left, to the determination of a jury.

These views are in consonance with judicial practice as established by our own adjudications, to some of which we refer in closing the opinion. *Deep River Man. Co.* v. *Fox*, 4 Ired. Eq., 61; *Frizzle* v. *Patrick*, 6 Jones' Eq., 354; *Thompson* v. *McNair*, Phil. Eq., 121; *McCormick* v. *Nixon*, 83 N. C., 113; *Dunkart* v. *Rinehart*, 87 N. C., 224; *Peebles* v. *Commissioners*, 82 N. C., 385; *Railroad* v. *Commissioners*, *Ibid*, 259.

To the same effect are High on Injunctions, §§ 35, 417, 599; and *Essex County* v. *Blair*, 1 Stockton (N. J.), 635.

There is error in issuing the injunction under the circumstances, and the order therefore is reversed. Let this be certified.

Error.          Reversed.