It seems to have been agreed between the parties that the restraining order should be continued on both parties till their rights should be finally determined, and that the Judge should hear the testimony and find the facts, to the end that such determination should be had before him at this hearing, and considered and passed upon in the present appeal; and the record states that the Judge, on hearing the pleadings, affidavits, proofs and admissions, found the facts and entered judgment that the plaintiff had acquired no superior rights to defendant (426) to occupy and build a road on the location in dispute, and that the permanent injunction prayed for be refused.
From the facts found by the Judge, it appears that plaintiff, on 23 August, 1906, after securing a franchise from the city of Fayetteville to build a street railway, obtained a street railway charter for that purpose from the Secretary of State under the general corporation law, which, among other things, authorizes the construction of branch lines to towns within a radius of fifty miles; and on the same day, after organizing by electing directors and officers, held a directors' meeting, and by formal resolutions adopted as the permanent location of its branch line to the town of Hope Mills, seven miles distant, the old road-bed of the Cape Fear and Yadkin Valley Railroad, between Fayetteville and Hope Mills, which had been abandoned several years before, and ordered the same to be staked out and a force of hands put to work clearing it.
That on 24 August, 1906, plaintiff had its adopted location staked out by driving stakes in the center of said abandoned road-bed from a *Page 343 
point near Holt-Morgan Mills, the southern suburb of the city of Fayetteville, to a point where the said road-bed should cross the main street of the village of Hope Mills; and on said 24 August plaintiff commenced work at a point near the Holt-Morgan Mills, clearing off its adopted location.
That on the evening of 23 August plaintiff engaged the services of C. J. Hedgpeth and J. W. Hodges, a justice of the peace, to get options from the owners of land along which its adopted location extended; and on the next day, five such options were secured; another on the 27th, and another on the 28th.
That a special meeting of the directors of plaintiff was duly called and held on 27 August, 1906, at which W. D. McNeil, president of plaintiff, and W. E. Kinley, vice-president, made a report that plaintiff had had the said abandoned road-bed its adopted location, (427) staked out 24 August, and on that day commenced clearing off the same; that further, at said meeting, the board of directors, by resolutions approved, ratified and confirmed the action of the company at prior meetings, and re-adopted the old road-bed, which had been staked out under its directions, as the adopted location of its line between said two towns.
That plaintiff was duly organized 23 August, 1906, $60,000 of its capital stock having been subscribed for, and on 27 August had a stockholder's meeting, at which all of the capital stock was represented; stock was assessed at one hundred per cent, to be paid as same should be called for by the directors; that on the same day the diectors made a call for a sum sufficient to meet present demands of the company, which was paid into the treasury; but no other part of the subscription had been paid in.
That plaintiff had done no work whatever in Fayetteville, Hope Mills, or any other incorporated town, up to the time of action against it; that such work as had been done by plaintiff was outside of any incorporated town, beginning about a mile from Fayetteville; and further, that plaintiff had proceeded, up to the time of action commenced, without procuring a right-of-way over any of the land along said roadbed from any of the owners, or instituted any condemnation proceedings; and without paying in any part of the capital stock except as heretofore stated.
That the bottom of excavations and top of embankments along the line of the abandoned road-bed is wide enough for only one railroad track; and if the defendants are allowed to interfere with plaintiff's preparation of its right-of-way, the damage will be irreparable. *Page 344 
Plaintiff avers, in its complaint, used as an affidavit, that it proposes to institute all proper proceedings for the ascertainment and payment of damages to the lands over which it has located its road where agreement as to price cannot be had with the owners of the lands.
That the defendant the Aberdeen and Rockfish Railroad (428) Company, is a solvent corporation which began the construction of its road at Aberdeen, N.C. and has completed the same to Hope Mills, has laid down fifty-four miles of track, with necessary rolling-stock, and is operating the said road to that point, and having by its charter, in addition to its general right of condemnation, the right to condemn any abandoned road-bed not now in use. That on 8 July, 1904, the defendant having reached the village of Hope Mills, entered into a contract with the Atlantic Coast Line Railroad Company that it would not then cross the line or build beyond said village towards Fayetteville for a period of five years, there being no other railroad connection to be acquired by extending its line to Fayetteville; that after plaintiff had adopted and located the line as above stated, at different dates, from 29 August to 8 September, the defendant company proceeded to obtain deeds for portions of the abandoned road-bed between Fayetteville and Hope Mills, which said deeds are now on record and registered within the dates above specified, and said defendant company has further instituted condemnation proceedings against other owners of property along said disputed line, the summons in said proceedings bearing date at different times; but all on or after 30 August, 1906.
And on 29 August, 1906, the defendant company had its chief engineer, Jerry Respass, to survey a line over the road-bed in dispute; and defendant avows its intention to acquire and appropriate the said abandoned road-bed by purchase and condemnation for its right-of-way.
In section 11 of the answer the purpose of the claim of the defendant is set forth as follows: That this defendant regards this abandoned road-bed as open and unused land over which no railroad company or street car company or power company or any other company had any right, dominion or control other than such rights as might be acquired by due process of law over any other unoccupied, unused, and (429) uncleared real estate; and in good faith, and acting upon such belief, it has proceeded, by the two methods provided by the laws of the State to acquire title, to-wit, by purchase and condemnation; and has been pursuing these two courses in order to secure its right-of-way.
As heretofore stated, his Honor dissolved the injunction, held that the plaintiff had acquired no prior right to the defendant to occupy *Page 345 
and build the road over the land in dispute, and refused the permanent injunction.
To this judgment, the plaintiff excepted and appealed.
There seems to be no substantial difference between the parties as to any facts material to the controversy and the principal question presented on this appeal is as to which of these two companies has the better right to appropriate and use the old and abandoned road-bed from Fayetteville to Hope Mills as its right-of-way.
It may be well to note that defendant does not resist the plaintiff's claim in this matter simply by reason of its having purchased certain portions of this old road-bed from some of the owners along the route; but, as shown in section 11 of the answer, the defendant, denying the validity of any claim made by plaintiff, asserts its own intention and right to go on and acquire, by condemnation and purchase, the use of this road-bed for its own right-of-way.
The question, then, is fairly presented as to which of these two claimants has the better right; and on this question the authorities are to the effect that where the grants are indefinite, leaving the exact route to be selected by the company, the prior right will attach to that company which first locates the line; and, in the absence of statutory regulations to the contrary, the first location belongs to that company which first defines and marks its route and adopts the same for its (430) permanent location by authoritative corporate action. Lewis on Eminent Domain, sec. 366; R. R. v. R. R., 141 Pa. St., 407; R.R. v. R. R., 159 Pa. St., 331; Johnson v. Callery, 184 Pa. St., 146; R. R. v. Blair, 9 N.J. Eq., 635; R. R. v. R.R., 110 Fed., 879.
In Railway v. R. R., 159 Pa., 331, it is held: "That the requisites of a valid location of a railroad as to third persons and rival corporations are: First, a preliminary entry by engineers and surveyors who run and mark the lines and report them to the company. Second, the adoption of such a line by the board of directors."
This entry of engineers and survey is to define and mark the line; and where this is clearly defined, as here, by the existence of an old road-bed, which is entered on and staked out by the agents of the company, and the route so marked is approved and adopted by the directors *Page 346 
as its permanent location, in such case a survey by engineers is not of the substance, and should not be considered as essential.
Lewis Eminent Domain, sec. 306, criticising the decision of R. R. v. R.R., 105 Pa., 13.
In the section referred to, this author says: "Where the conflict arises out of rival locations over the same property by companies acting under general powers, that one is entitled to priority which is first in making a completed location over the property, and the relative dates of their organizations or charters are immaterial."
And again, in same section, as pertinent to this question:
"The making of a preliminary survey by an engineer of a railroad company, never reported to the company or acted upon, will not prevent another company from locating on the same line."
And further:
(431) "Where priority of right has been secured by priority of location it cannot be defeated by a rival company agreeing with the owners and purchasing the property. The reasoning of Shiras,J., upon this point is so cogent that we cannot do better than quote it: `It is certainly equitable that a company, which in good faith surveys and locates a line of railway, and pays the expenses thereof, should have a prior claim for the right-of-way for at least a reasonable length of time. The company does not perfect its right to the use of the land, as against the owner thereof, until it has paid the damages, but as against a railroad company, it may have a prior right, and better equity. The right to the use of a right-of-way is a public, not a private, right. It is, in fact, a grant from the State, and although the payment of the damages to the owner is a necessary prerequisite, the State may define who shall have a prior right to pay the damages to the owner, and therefore acquire a perfected right to the easement. The owner cannot, by conveying the right-of-way to A, thereby prevent the State from granting the right to B. All that the owner can demand is that his damages shall be paid, and, subject to the right of compensation to the owner, the State has the control over the right-of-way, and can, by statute, prescribe when, and by what acts, the right thereto shall vest, and also what shall constitute an abandonment of such right. * * * The injustice and injury to private and public rights alike, which would arise, were it held that, after a company has duly surveyed and located its line of railway, and is in good faith preparing to carry forward the construction of its road, some other company may, by private purchase, procure the right-of-way over parts of the located line, and either prevent the construction of the road or *Page 347 
extort a heavy and exorbitant payment from the company first locating its line as a condition to the right to built the same as originally located, are strong reasons for holding that the first location, if made in good faith, and followed up within a reasonable time, (432) may confer the prior right, even though a rival company may have secured the conveyance of the right-of-way by purchase from the property-owners after the location, but before the application to the Sheriff for the appointment of commissioners.'"
In some of the authorities supporting this position it is stated as one of the requirements that the route, or line, after being surveyed, shall be platted and returned to the general offices of the company, and there approved as stated; and in others, that such survey and plats shall be filed in some public office and there recorded. But this will no doubt, be found, on examination, to be on account of some public statute or provision of the charter, and is not an incident of a completed location, as a general proposition. There is no such statutes with us. By sec. 2600 railroad corporations are required, within a reasonable time after their road is constructed, to file a map and profile of their route and of land condemned for its use with the Corporation Commission. But this is for information deemed necessary to enable that body to deal intelligently with matters within the scope of its duties, and is not required as a part of a correct and completed location.
An application of these principles to the facts before us clearly establishes, we think, that the plaintiff has the prior right to the use of the road-bed as a part of its right-of-way.
After obtaining a charter and organizing under it, this road-bed, on 23 August, by resolution of its directors, was formally adopted as its permanent location between Fayetteville and Hope Mills, and direction given to mark and stake the line. On 24 August this was done by the agent of the company appointed for the purpose; report was duly made to the company; and on 27 August this action was likewise, by resolutions of the directors, approved, ratified and confirmed; and plaintiffs avow their good faith and their intention and ability to go on and condemn the right-of-way and construct their road (433) pursuant to law.
There are various objections urged by defendant against the validity of plaintiff's claim, but none of them, we think, can be sustained.
It is contended that the capital stock has not been issued and that no money has been paid thereon; that plaintiff, incorporated as a street railway, has built no part of the road as yet, in Fayetteville or any *Page 348 
other town, but is only proceeding in the country, and on a branch road, before the main road is constructed.
These, and all such objections, even if valid, could only be made available by direct proceedings instituted by some member of the company for unwarranted or irregular procedure on the part of the officers, or by the State, for abuse or nonuse of its franchise, and are not open to collateral investigation in a case of this character, nor at the instance of defendant. R. R. v. Lumber Co., 114 N.C. 690.
But these objections are not valid. Plaintiffs have taken out their charter under the general corporation law, as they are authorized to do by sec. 1138 of the Revisal; and this section also provides that the term street railways includes railways operated by steam or electricity or any other motive power, used and operated between different points in the same municipality or between points in municipalities lying near or adjacent to each other, or between the territory lying contiguous to the municipality in which is the home office of the company; and such railways may carry and deliver freight, etc.; with a proviso that no such railway shall operate a line extending in any direction more than fifty miles from the municipality in which the home office is situate, etc.
Sec. 1140 provides that the persons associated shall constitute a corporation from the time of filing a proper certificate in the office of the Secretary of State. And sec. 1141 provides that until the directors are elected, the signers of the certificate shall have the direction (434) of the affairs and organization of the corporation, and may take such steps as are proper to obtain the necessary subscriptions and stock and to perfect the organization. We find no requirement of the statute that the stock should be issued or paid up before a valid organization can be effected or corporate action taken.
The plaintiff, therefore, has thus far acted in accordance with law and within its chartered rights and privileges, and the objections referred to are not well taken.
Again, it is claimed by defendant that its charter gives it the specific right to condemn old and abandoned road-beds; and so it does. And if this route in dispute had remained an old and abandoned roadbed simply that, and nothing more — defendant would have the undoubted right to acquire and use it. But if plaintiff, as we have held, has established over it a prior right of appropriation, then this old road-bed has changed its complexion. It no longer fills the description of this specific provision of plaintiff's charter. It has, so far as *Page 349 
defendant's present claim is concerned, become a part of plaintiff's right-of-way.
Defendant further takes the position that it has the right to condemn this road-bed, including the plaintiff's right-of-way, under the general powers given in its charter.
This position is hardly open to defendant; for, as heretofore stated, defendant is here asserting that plaintiff has no right-of-way, and seeks to condemn the route as open and unoccupied territory; but, assuming that the allegations and evidence set out in the record present the question, the law is against the defendants position.
It is undoubtedly true that property which has been appropriated to public use, railroad or other, may, under lawful authority and procedure, be condemned and so appropriated to another public use. But where such second appropriation is entirely inconsistent with the first, or practically destroys it, such power can only be exercised by reason of legislative authority given in express terms or by necessary implication. The test as to when this authority will be implied (435) is well stated in the case of Springfield v. R. R., 58 Mass. 63, as follows:
"An act of the Legislature which authorizes the construction of a railroad between certain termini, without prescribing its precise course and direction, does not prima facie confer power to lay out the road on and along an existing highway; but it is competent to the Legislature to grant such authority, either by express words or by necessary implication; and such implication may result either from the language of the act or from its being shown, by an application of the act to the subject-matter, that the railroad cannot, by reasonable intendment, be laid in any other line."
And elsewhere it is further held: "That it must be a necessity arising from the very nature of things over which the corporation has no control, and not a necessity created by the company itself for its own convenience or for the sake of economy."
This statement of the doctrine will be found supported by the weight of well-considered authority. 1 Lewis on Eminent Domain, sec. 267c; 3 Elliott on Railroads, sec. 974; Springfield v. R. R., supra; Hickok v. Hine,28 Ohio St. 523; In re City of Buffalo, 68 N.Y. 167; Pittsburg Junction v.R. R., 122 Pa., 511.
A decision referred to in our Court, R. R. v. R. R., 83 N.C. 489, is in accord with another principle applicable to the subject: "That while a general grant of power will not ordinarily justify the taking of property already devoted to a public use and applying it to another *Page 350 
and different use, a general grant of a power of eminent domain for a particular purpose may be sufficient to authorize such an appropriation as will not essentially injure or interfere with the public use to which the property is already devoted." 10 A. E., 95.
This principle does not in any way conflict with our (436) present-ruling, which, as stated, involves the proposition that the application to the second use is entirely inconsistent with, or practically destroys the enjoyment of the first.
An extract from the North Carolina decision will disclose the principle on which it was based, and show that the opinion in no way conflicts with our present decision. Says the Chief Justice:
"It is reasonable, as contended in the argument for the plaintiffs, that land of one such corporation, necessary for the exercise of its franchise and to the discharge of its duties, should not be taken and appropriated by another corporation no more important or useful, unless upon a clear expression of the legislative intent to confer it, and then the act itself would be a declaration that the condemnation was required for the public good. If the present application were to have this effect and seriously injure the business of the plaintiff companies, we would hesitate to hold that the right-of-way demanded by the defendant could be condemned under the general words found in its charter. But it is entirely otherwise. No real interruption of the plaintiff's business, no interference with the exercise of the franchise conferred in the charter, and, in the opinion of the witnesses, little or no inconvenience to transportation, will result from the construction of another track by the side of that of the plaintiff's, and eight feet or more from it, as proposed to be done by the commissioners. At least such additional track can be laid down, and if built will not seriously, if at all, disturb the operations of the plaintiff companies, or their putting down and using a second track when required for an enlarged transportation in the future." R. R. v. R. R.,83 N.C. 495.
1. Here, as we have just seen, there is no express grant to condemn the plaintiff's right-of-way.
2. There is no necessity shown for such action. The defendant, under the general power of condemnation, can readily, at least (437) so far as the testimony shows, obtain another right-of-way from Hope Mills, its present terminus, to Fayetteville.
3. The evidence further shows that this road-bed is only sufficient to permit the laying of one track, and if defendant is allowed to condemn and appropriate it, such action will practically destroy the use of this right-of-way on the part of plaintiff. *Page 351 
We are of opinion, therefore, and so hold, that plaintiff's right to the exclusive use of this road-bed, as against defendant's claim to appropriate it for its own right-of-way, is clear.
And it is equally clear, we think, that the plaintiff is entitled to the injunctive relief as demanded in his complaint.
This right to condemn land is a part of the plaintiff's franchise: R. R.v. Dunbar, 95 Ill. 571; and it is well settled that courts of equity will protect one in the exercise and enjoyment of a quasi- public franchise of this character by process of injunction, where the threatened injury is irreparable or the remedy at law is inadequate.
The grounds of this jurisdiction are well set forth in the opinion ofMr. Justice Connor, R. R. v. Olive, ante 264, citing Beach Modern Equity Jurisprudence, sec. 676. And decisions to like effect in other courts of supreme jurisdiction fully support the doctrine so clearly stated in that opinion. R. R. v. R. R., 129 Mo., 62; Cunningham v. R. R., 27 Ga. 499;Railway v. Railway, 75 Ill. 113.
The case cited for the defendant from our own Court, R. R. v. R.R., 88 N.C. 79, has no application here. In that case it is stated that the construction forces of the two rival companies were miles apart and not likely to come in contact for a long time to come. There was no present interference, actual or threatened, with the enjoyment of plaintiff's franchise; and injunction was denied because, on the facts as they appeared, no injury would result by denial of the application. (438)
Here, the parties are already on the same ground; the defendant is seeking, by purchase and proceedings of condemnation, to acquire the road-bed for its own right-of-way, which, as we have seen, it has no legal right to do; and its engineers are surveying the route with a view of presently carrying into effect its avowed an unlawful purpose.
It may be well to note that, according to a decision, in S. v. Wells, post, 590, plaintiff has no right to enter on this land for the purpose of constructing its road, until it has acquired the right to do so by agreement with the owners or by paying into Court the amount awarded by commissioners appointed in condemnation proceedings duly had. But it has the right, if it proceeds in good faith and without unnecessary and unreasonable delay, to go on and appropriate the land under the methods provided by law, and to be protected in the exercise and enjoyment of its franchise.
There is error in the judgment below, and this will be certified, to the end that the injunction against the plaintiff be dissolved, *Page 352 
and that defendant be enjoined from further interference with plaintiff's right as indicated in this opinion.
Reversed.
NOTE. — Since this opinion was written, attention has been called to a decision of the West Virginia Court — R. R. v. R. R., 57 W. Va. 641, and it is considered desirable that this full and learned opinion should be cited as an additional and apposite authority on some of the questions presented and discussed in the principal case.
Cited: R. R. v. R. R., 148 N.C. 76; Comrs. v. Bonner, 153 N.C. 70.
(439)