Mr. Justice WOOD concurs herein.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* MEMPHIS, DALLAS & GULF RAILROAD COMPANY.

Opinion delivered January 22, 1912.

1.  EMINENT DOMAIN—CONDEMNATION BY RAILROAD OF PROPERTY OF ANOTHER RAILROAD.—A railroad company is not entitled to condemn for depot purposes land which another railroad company had acquired in good faith for the same purposes, although the latter had not filed its map and profile of its route. (Page 496.)

2.  SAME—JURISDICTION OF EQUITY.—An unlawful attempt by one railroad company to condemn property acquired by another railroad company for railroad purposes may be enjoined in equity. (Page 499.)

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

The St. Louis, Iron Mountain & Southern Railway Company instituted in the circuit court a proceeding under the statute to condemn for railroad purposes a certain block of ground in the city of Arkadelphia in Clark County, Arkansas,

the property of the Memphis, Dallas & Gulf Railroad Company, and in its petition for condemnation made the usual statutory allegations. The defendant demurred to the petition which was overruled. The defendant then filed an answer, and a motion to transfer the cause to the chancery court. The answer denied the allegations of the petition or complaint. In addition, it set up that the defendant was a railroad corporation engaged in constructing a railroad from Dallas, Texas, through Arkansas and Clark County to Memphis, Tennessee; that a part of its line was already constructed and in operation; that its road was in actual operation from Daleville, a point across the river and one mile distant from Arkadelphia, eastward through Clark County to Dalark, a distance of seventeen miles; that it was the intention of defendant to construct its road into the city of Arkadelphia, and that it purchased the block of ground in question for depot purposes before the condemnation proceeding was instituted by the plaintiff. The plaintiff demurred to the answer, and the demurrer was overruled. The court then transferred the cause, over the objections of the plaintiff, to the chancery court.

The evidence on the part of the plaintiff shows that it has owned and operated its main line of railroad on its present location through the city of Arkadelphia since about the year 1873. It had a freight depot near the block of ground in question, and for many years used the block of ground in question, with the consent of its owner, in receiving and discharging freight from its warehouse. It finally erected a new depot, and, wishing to use this block of ground in connection therewith, began negotiations with its then owner for the purchase thereof. Pending the negotiations, the defendant purchased the ground. The evidence on the part of the plaintiff tends to show that the block of ground in question is necessary for its use for depot purposes. After the defendant purchased the block of ground, the plaintiff instituted a proceeding to condemn it.

The evidence on the part of the defendant shows that a charter was granted to it to construct a railroad from Dallas, Texas, through the State of Arkansas and Clark County to Memphis, Tennessee; that it had already built forty-two miles of railroad, and bought twenty-eight miles all leading in the

direction of Memphis from Ashdown, in Little River County, Arkansas; that it has forty-two miles in operation from Ashdown to Murfreesboro in Pike County, west of Arkadelphia, and has six and one-half miles in operation east of Arkadelphia between Daleville and Dalark in Clark County; that Daleville is just across the river from Arkadelphia and about a mile east of it; that a distance of twenty-five miles would connect these two parts of its road. That it has already secured the right-of-way as far east as Helena, and has secured bonuses from Arkadelphia, Pine Bluff, DeWitt and Helena; that at Arkadelphia its proposed road will connect with the old Ultima Thule, Arkadelphia & Mississippi Railroad, now owned by the defendant, and which extends twenty-two miles in the direction of Pine Bluff; that the defendant intends to erect a depot in Arkadelphia within the next two years, and the block of ground in question was purchased for that purpose; that, if this piece of ground is taken away from it, it will destroy the use for which it was designed by the defendant; that the company intends to construct a bridge over the river between Arkadelphia and Daleville. After the river is crossed, the location of this piece of ground is described by defendant's witnesses as follows:

"There is a hollow which we follow for some distance, and this piece of ground lies in a triangular shape right at the mouth of this hollow. It will be necessary for us to follow further down the valley with the main line, and the valley will be used for yards, sidetracks, etc., and this particular piece of land would be about where our station would be placed. There is a bluff on each side, which would make it impracticable to undertake to cut down and put in shape for station location. There is no other piece of ground, close to the city of Arkadelphia as this place which it would be practicable from a topographical standpoint for our company to use or secure for the purpose of erecting a station. The location of a station on this piece of ground was the most desirable that able engineers were able to find."

The testimony on the part of the defendant also showed that, at the time the petition to condemn was filed by the plaintiff, no map of definite location had been filed by the defendant of its road through Clark County, as required by the

statute. The witnesses do say, however, that the defendant's engineers had been over the ground, and that no other route was. as practicable as that described above; that since the institution of this suit the engineers of the defendant have located its line along this route, and a map and profile thereof has been prepared, properly signed and filed in the county clerk's office as required by statute.

Other evidence will be stated or referred to in the opinion.

The chancellor found that the defendant had a railroad in actual operation, and intends to construct its line of road into and through Arkadelphia in the near future and to establish its station on the land in controversy; that it has entered into a contract with the citizens of Arkadelphia by which it is required to construct its lines into that city by December 14, 1911, and that the land in question was purchased for a passenger station, and that all of it will be required for that purpose. A decree was accordingly entered enjoining the plaintiff from condemning said land, and from interfering with the defendant's use and possession of said block of ground.

The plaintiff has duly prosecuted an appeal to this court.

*W. E. Hemingway, E. B. Kinsworthy, W. V. Tompkins, T. T. Dickinson* and *James H. Stevenson,* for appellant.

1. The purchase of the lot of ground in controversy by appellee at a private sale and the recording of its deeds therefor transferred the title and gave notice of private ownership; but neither this nor the horseback survey, nor any private unrecorded and unadopted maps or profiles of the company or its engineers nor the intent of its vice president and general manager or other officers or agents to use it for railroad purposes impressed upon it a public use or a public character so as to reserve the same for its own use and thus pre-empt and protect the property from being taken from it by appellant in the exercise of its power of eminent domain. 168 Ind. 360; 13 L. R. A. (N. S.) 197; 110 N. Y. 128; 12 L. R. A. 220; 4 L. R. A. 785; 110 Fed. 879; 6. N. J. Eq. 635; 105 Pa. 13; 30 S. E. 86; art. 2, § § 22, 23, art. 12, § 9, and art. 17, § 9, Const. Ark.; Kirby's Digest, § § 2900, 2901, 2902, 6547; *Id.* § § 6545, 6546, as amended by acts 1907, p. 195; *Id.* § § 6548, 6574, 6569, 6570, 6571, 6572, 2947, 2955-6, 2903-5, 2958; *Id.* § § 6581, 6575;

43 Ark. 111; 59 Ark. 171; 76 Ark. 239; 78 Ark. 83; 91 Ark. 231; 137 S. W. 815; 68 Ark. 134; 57 Ark. 363.

*Callaway & Huie,* for appellee.

1.   It is true, as contended by appellant, that, at law, the statutory right of a railroad company to condemn land for its use being special, no question could enter into the prceedings for such condemnation except the compensation to be paid the owner, but certainly, upon interposing an equitable defense, the defendant has the right to invoke the aid of a court of chancery.   76 Ark. 239.

2.   Appellee had the right to purchase the property and appropriate it to public use without first filing a map and profile of definite location.   Kirby's Digest, § 6574.   There is no statute which prescribes at what time, with reference to filing map and profile in the county, it is necessary for a railroad company to purchase property for public use.   The question, then, in this case, resolves itself into the proposition whether or not appellee intended to use the property for public purposes, and, if so, when?

The chancellor's finding that appellee acquired the lot in controversy for the purpose of erecting a depot thereon, and that appellee intends to construct a railroad through the city of Arkadelphia and said lot *in the near future,* is amply supported by the evidence.

Railroad property already set apart or devoted to use as such can not be devoted to another public use which would nullify the purpose for which it was acquired.   69 Pac. 568; 60 L. R. A. 383.   The policy in this State is to encourage the construction of new railroads.   43 Ark. 111, 127.

HART, J., (after stating the facts).   It is insisted by counsel for the plaintiff that the mere fact that lands are owned by a railroad corporation does not impress them with a public use; and that a railroad company can not simply, by running a preliminary line, or by a horseback survey, and purchasing lands over which such survey has been extended, so impress such lands with a public use as to pre-empt them as against another railroad company which subsequently institutes condemnation proceedings against such lands.

This is true as an abstract principle of law, but we do not

consider that it is applicable to the facts of this case.  Section 6569 of Kirby's Digest provides that every such company (railroad companies), before proceeding to construct a part of their road through any county named in their certificate of association, shall make a map and profile of the route intended to be adopted by such company which shall be certified by a majority of the directors and filed in the office of the clerk of the county court of such county for the inspection and examination of all parties interested therein.

Section 2947 provides, in substance, that a railroad company, after having surveyed and located its line of railroad, shall, in all cases where such company fails to obtain by agreement with the owner of the property through which said line of road may be located, the right-of-way over the same, have the right to institute condemnation proceedings.

Thus it will be seen that the map and profile is only required to be filed before actual construction of the road in the county is begun, and is not required to precede condemnation.  This is the plain letter of the statute.  Condemnation proceedings may be instituted after the line is located, and before the map and profile is required to be filed.  The map and profile may be filed after the condemnation proceedings are instituted.  The object of locating the line before condemnation is to fix in some public and definite manner the exact route of the proposed road so that the damages to property owners may be properly assessed.

It is obvious that, if the line was not definitely located, there could be no guide by which to determine the measure of damages to property owners.  So it may be said that, under our statutes, a railroad company can not institute proceedings to condemn property before it has located its lines of road; but it by no means follows that as to property owned by a railroad company a rival company may institute condemnation proceedings in every instance before the company owning the property has caused its lines to be surveyed and its location fixed by stakes or other monuments placed in the ground. Cases of this kind must be determined according to the particular facts of each case.

In the case of *Fayetteville Street Railway* v. *Aberdeen & Rockfish Railroad Company*, 142 N. C. 423, 9 A. & E. Ann.

Cas. 683, the Supreme Court of North Carolina held (quoting from syllabus):

"Ordinarily, one of the requisites of a valid location of a railroad, as to third persons and rival corporations, is a preliminary survey by engineers and surveyors who run and mark the lines and report them to the company claiming the prior location; but where the lines are clearly defined, as by the existence of an old roadbed which is entered on and staked out by the agent of the locating company, and the route so marked is approved by the directors as the permanent location of their railroad, a survey by engineers is not of the substance, and should not be considered as being essential."

Under section 6574 of Kirby's Digest, railroad companies have the right to locate and erect all necessary and convenient stations, and to obtain and hold the lands necessary therefor.

Here the defendant had a line of road in actual operation practically to the city of Arkadelphia. Its terminus was across the river, only a mile away from the proposed station site. It contemplated connecting two parts of its road already in operation and of extending them both east and west. It had contracted with the citizens of Arkadelphia to construct its road into the city by a designated date. It had selected the most available bridge site, and on the Arkadelphia side of the river there was but one practical route from the bridge site selected, and that led up a valley to the ground in question. Bluffs were on either side, so that no other route was practicable. This was evident to the engineers of the company without making a survey with instruments. Hence, to all intents and purposes, it was as good and sufficient survey as if made by instruments. The engineers reported that the ground in question was the only available site for a station. The defendant then purchased the ground for that purpose. It afterwards filed its map and profile as required by the statute preparatory to commencing the work of construction. As above stated, the defendant's line of road was in actual operation practically to the city of Arkadelphia, and, under the facts and circumstances before us, we are of the opinion that the defendant made an inchoate appropriation of the block of ground in question before the plaintiff filed its petition to condemn. We do not regard the cases cited by counsel for

the plaintiff as being applicable to the facts before us. For instance, in the case of *Southern Indiana R. Co.* v. *Indianapolis & L. R. Co.* (Ind.) reported in 13 L. R. A. (N. S.) 197, the facts were that a railroad company in process of construction acquired by purchase certain lands through which its proposed road was located, but its map and profile, intended to show the route it had adopted, did not show that all of the proposed right-of-way purchased was necessary for the use of the road, and gave no idea of the width of the right-of-way; and the court held that, under such circumstances, there was no appropriation for right-of-way purposes. Here the proof shows that the ground purchased was for a station, and that all of it was necessary for that purpose.

We do not think the case of *White River Ry. Co.* v. *B. & W. Tel Co.*, 81 Ark. 195, has any application to the facts of this case. That case only decided that the railroad had no right to commence the construction of its road until it filed the map and profile required by the statute, and that it had no exclusive right to its right-of-way prior to the time it acquired it.

It is next contended that the circuit court had the power to determine whether or not the lands were subject to condemnation; and that the court erred in transferring the cause to the chancery court. This question has already been decided adversely to the contention of counsel by this court. *Mountain Park Terminal Ry. Co.* v. *Field*, 76 Ark. 239; *Gilbert* v. *Shaver*, 91 Ark. 231, and later cases.

It follows that the decree will be affirmed.