## WADSWORTH LAND COMPANY v. PIEDMONT TRACTION COMPANY ET ALS.

### (Filed 22 May, 1913.)

**1. Street Railways—Quasi-public Corporations—Private Business—Condemnation—Easements.**

Where a corporation is authorized to conduct the *quasi*-public business of operating a street railway, it may exercise the right of eminent domain in respect to this business given to it by its charter and Revisal, secs. 1138, 2575, notwithstanding it is also authorized to conduct business of a private nature.

**2. Same—Petition—Presumption of Good Faith—Use for Private Purposes—Remedies—Quo Warranto.**

Where an electric street railway company, also authorized to conduct business of a private nature, sets forth in its petition to condemn lands that it desires the lands in connection with its works for production of power "to generate electricity for the use and benefit of the public," and it does not appear that the lands are to be used for other purposes, it will not be presumed that the corporation is acting in bad faith; and should it afterwards appear that the land thus acquired was for private purpose, the remedy would be by *quo warranto*, etc.

**3. Street Railways—Radius of Operation—Interstate Connections—Charter Rights—Interpretation of Statutes.**

A corporation chartered under Revisal, 1138, may operate a "street railway," which includes railways operated by steam or electricity, between points in the same municipality, or between points in different municipalities within a radius of 50 miles, and may haul and deliver freight, etc.; and a violation of its charter is not effected by the fact that the railway thus operated interchanges traffic with other carriers doing an interstate business.

**4. Street Railways — Condemnation — Petition—"Commercial Railways"—"Words and Phrases"—Private Purposes.**

A *quasi*-public corporation operating a street railway, also having the authority to engage in business of a private nature, in its petition to condemn land stated that the land was to be used in generating power for public purposes, etc.: *Held*, the use of the word "commercial railway" in the petition did not indicate that the land was to be used for private purposes, for the company engages in commerce when it carries articles of merchandise for the public.

APPEAL by plaintiffs from *Webb, J.,* at January Term, 1913, of MECKLENBURG.

*Burwell & Cansler, Tillett & Guthrie, and Maxwell & Keerans for plaintiff.*

*Osborne, Cooke & Robinson and Pharr & Bell for defendants.*

CLARK, C. J. The plaintiff contends that the Piedmont Traction Company cannot exercise the power of eminent domain, because under its charter it is authorized to engage in private business in addition to its authority to operate a street railway, which is a *quasi*-public business. We think the law is clearly stated thus in 15 Cyc., 579: "But the fact that the charter powers of the corporation, to which the power of eminent domain has been delegated, embrace both private purposes and public uses does not deprive it of the right of eminent domain in the promotion of the public uses." The traction company has the power of eminent domain, not only by virtue of its charter, but by Revisal, secs. 1138 and 2575; *Street R. R. Co. v. R. R.,* 142 N. C., 423.

In *McIntosh v. Superior Court,* 56 Wash., 214, it is said: "It is next contended that while the company is authorized to construct and build railroads, it is also authorized to engage in private business. Conceding this to be true, the company may condemn and appropriate the land for the aid of its public purposes for public uses only." To same purport, *Power Co. v. Webb,* 123 Tenn., 596.

The plaintiff further objects that the defendant's charter shows that a great many of its purposes are private, and that the petition does not show that the lands sought to be taken will not be used for such private purposes. Looking into the petition, it is there stated that the defendant desires this land in connection with its works for the production of power "to generate electricity for the use and benefit of the public." It has the power of condemnation under its charter and the general statute, and nothing in this record discloses that the petitioner is seeking the land for any other than public purposes. We cannot presume it to be acting in bad faith. If, after acquiring the land under condemnation for a public use, the petitioner

should devote it to private purposes, there is a remedy by. *quo warranto* and otherwise. The mere possession of incidental powers under the charter to engage in private enterprises will not be held to deprive the corporation of the right of eminent domain to effectuate its public purposes, and when it is seeking to exercise this right for the public·uses which it is authorized to undertake. *Walker v. Power Co.,* 19 L. R. A. (N. S.), 725; *Brown v. Gerald* (Me.), 109 Am. St., 526; *Collier v. R. R.,* 113 Tenn., 121; Lewis on Em. Dom. (3 Ed.), 314.

In *Street R. R. v. R. R., supra,* it was contended that the plaintiff was not pursuing the public purpose expressed in its charter of building a street railroad in Fayetteville, but was building a branch line in the country, and was therefore acting *ultra vires.* The Court said that such objections, "even if valid, can only be made available by direct proceedings instituted by some member of the company for unwarranted or irregular procedure on the part of the officers, or by the State for abuse or nonuse of its franchise, and are not open to collateral investigation in a case of this character nor at the instance of the defendant."

The traction company has taken out its charter under the general corporation law as authorized by Revisal, 1138, and that section provides that the term "street railway" includes railways operated by steam or electricity or any other motive power, used and operated between different points in the same municipality or between points in municipalities lying adjacent to each other, and that such railways may carry and deliver · freight, etc., with the restriction that the line so operated shall not extend in any direction more than 50 miles from the municipality in which the home office is situated.

We do not see anything in the petition of an intention on the part of the traction company to use the property sought to be condemned for any other than *quasi*-public purposes. It is true, as the plaintiff contends, that the petition uses the words "commercial railway." But that is purely a matter of phraseology, for the company is engaged in commerce when it carries articles of merchandise.

The plaintiff contends that the traction company proposes to engage in interstate business. The traction company, however, is now operating only between Charlotte and Gastonia. It would not be in violation of the terms of its charter if it should take freight or passengers to be delivered at either terminus to other carriers to be transported beyond the limits of the State. The traction company would not thereby be exceeding its chartered rights, and if it did, the remedy is, as already stated, not to be found by refusing the company the right to condemn an easement through the land, which certainly is within the scope of its chartered powers, for the transaction of legitimate business. The Court will not sustain a collateral attack, and deny the right of condemnation, upon a suggestion that the petitioner may exceed its chartered right in the use of the property thus acquired by condemnation.

Affirmed.