CAROLINA-TENNESSEE POWER COMPANY v. HIAWASSEE RIVER POWER COMPANY.

(Filed 21 June, 1924.)

1. **Waters—Power Plants—Condemnation—Prior Rights—Judgment— Estoppel.**

After a water-power company having the statutory authority has staked off upon the lands and mapped its location, in condemnation, and has commenced and is proceeding without unreasonable delay, in good faith, to develop the water-power thereon, another such company may not acquire by condemnation subsequently any portion of the land for such purposes thus designated; and where a portion thereof has been unlawfully sought to be thus condemned, and the court has so determined, the case is conclusive as to another portion thereof thus situated, under the principle that it either was or should have been litigated in the former action.

2. **Same—Constitutional Law.**

The superior right to a water-power prior acquired, under condemnation, to that attempted to have been later acquired under such proceedings, is not a special privilege prohibited by the Fourteenth Amendment to the Federal Constitution.

ADAMS, J., did not sit or take part in the determination of this case.

APPEAL by defendant from *Bryson, J.,* at December Special Term, 1923, of CHEROKEE.

Special proceeding to condemn lands and water rights on the Hiawassee River in Cherokee County, for use of petitioner in connection with a water-power development or hydroelectric plant.

The matter was heard before the clerk, who appointed commissioners to assess the value of the lands condemned, as provided by C. S., 1720. Said commissioners in due course made their report, which was confirmed by the clerk on 14 February, 1923. Defendant appealed to the Superior Court in term.

Upon the hearing, a jury trial was waived and it was agreed that the judge should hear the evidence, find the facts and render judgment accordingly.

From the judgment entered in favor of petitioner, the defendant appeals, assigning errors.

*Martin, Rollins & Wright for plaintiff.*
*J. Crawford Biggs for defendant.*

STACY, J. This case is only another branch of the same litigation which has been going on between these parties for a number of years. *Power Co. v. Power Co.,* 186 N. C., 179; *S. c.,* 175 N. C., 668; *S. c.,* 171 N. C., 248.

In 1909, the petitioner, through its officers, engineers and other representatives, entered upon, explored and surveyed certain lands and water rights in and along the Hiawassee River in Cherokee County, N. C., not declared by law to be navigable, and marked upon the ground the location of its route for water-power development, and adopted the same by authoritative corporate action. The proposed location of said works, dams, flumes, power plants and other structures, extends for a considerable distance up and down the Hiawassee River and covers what is spoken of on the record as two basins or reservoirs—one known as the upper reservoir and the other as the lower reservoir.

Thereafter on 21 June, 1911, the Carolina-Tennessee Power Company filed and deposited in the office of the clerk of the Superior Court for Cherokee County surveys, maps and plats showing the proposed location of said works and the lands necessary for their successful operation.

The location of petitioner's proposed works, dams, etc., for the development of water-power and the generation of electricity, described in the petition and amended petition in this cause, is the same as the location of the proposed works, dams, etc., described in the record and

9—188

judgment in the case brought by the Carolina-Tennessee Power Company against the Hiawassee River Power Company, and reported in 186 N. C., 179, the only difference being that in the reported case the lands and water rights there sought to be condemned were located in what is known as the upper reservoir, while the lands and water rights here sought to be condemned are located in what is known as the lower reservoir—both said upper and lower reservoirs being covered by the one location as marked out and staked off by the petitioner in 1909. Hence many of the questions now presented were considered and determined by us in the case just mentioned. The two cases involve the same development, the same location, and the same improvement; the parties are the same, the only difference being in the tracts of land sought to be condemned in the two actions.

The defendant company was not organized until 1914, several years after the petitioner had staked out the lands in question and adopted its route in accordance with the provisions of its charter. But defendant contends that it has now acquired sufficient territory and water rights within the "lower reservoir" to constitute an independent water-power, which is not subject to condemnation by the petitioner.

As between the Carolina-Tennessee Power Company and the Hiawassee River Power Company, the right, as well as the prior right of the petitioner to condemn the lands in dispute and to acquire them for use in its hydroelectric or water-power development must be considered as settled by our former decisions. In the absence of unreasonable delay or evidence tending to show a want of good faith, or abandonment of its purpose on the part of the petitioner, or some specific legislative authority granting such right, the defendant may not acquire a water-power within the water-power already marked out by the petitioner, and thus destroy the petitioner's superior rights. This would be to allow a smaller water-power to swallow up a larger one; and there is nothing on the present record to warrant such a procedure.

The general questions we are now considering were so thoroughly examined and dealt with in the carefully prepared opinion of the present *Chief Justice* in *R. R. v. R. R.,* 142 N. C., 423, that little, if any more, need be said on the subject. It was there held that, in the absence of statutory regulations to the contrary, the prior right belongs to that company "which first defines and marks its route and adopts the same for its permanent location by authoritative corporate action," citing apposite authorities, and among them Lewis on Eminent Domain, sec. 305, where it is said: "Where the conflict arises out of rival locations over the same property by companies acting under general powers, that one is entitled to priority which is first in making a completed location

over the property, and the relative dates of their organizations or charters are immaterial."

In *C. and O. Ry. Co. v. Deepwater Ry. Co.,* 57 W. Va., 641, it was held:

"A survey staked out upon the ground as a center line, a preliminary line, or as an actual location, whether delineated on paper or not, if adopted by the corporation, as aforesaid, is a location within the meaning of the statute, and the company first making such location has a right to it superior to that of any other company.

"A railway company may begin the work of location on any part of its contemplated route, and a location of a part only of its road may be held against a rival company seeking the same location as long as such locating company manifests good faith by the diligent prosecution of the work contemplated by its organization."

See, also, *L. H. and T. Co. v. R. R.,* 132 Wis., 313, where the matter is discussed at considerable length.

The constitutionality of petitioner's charter is again assailed by the defendant upon the ground that the Legislature has granted it certain special privileges and special charter rights, which are in violation of the Fourteenth Amendment to the Constitution of the United States. The exceptions addressed to this question must be overruled on authority of *Power Co. v. Power Co.,* 171 N. C., 248; *S. c.,* 175 N. C., 668; *R. R. v. Ferguson,* 169 N. C., 70; *Land Co. v. Traction Co.,* 162 N. C., 314; *R. R. v. R. R.,* 142 N. C., 423. It would only be "threshing over old straw" to repeat here what has been so recently said in these cases. For a valuable discussion of the subject, see *Trust Co. v. Harless,* 15 L. R. A., 505.

The defendant also questions the good faith of the petitioner, and alleges that it does not intend to carry on the business authorized by its charter and thus use the lands sought to be condemned for water-power development, etc. This matter was squarely presented in the case, *supra,* between these same parties, involving the lands and water rights located in what is known as the upper reservoir, and definitely ruled against the defendant's position. The trial court, therefore, properly held that the defendant was precluded from relitigating this question in the present suit. These two suits were brought during the same month; the two controversies are between the same parties; the public improvements are described in identically the same language and are in fact the same identical public improvements. The only difference between the two cases is that different tracts of land, in the same location, are being condemned in the different suits. The rule is well settled that a judgment of a court having jurisdiction of the parties and of the subject matter binds all of the parties and their privies as to all

issuable matters embraced in the pleadings and all material matters within the scope of the pleadings which were in fact investigated and determined. *Coltrane v. Laughlin,* 157 N. C., 287; 72 S. E., 961; *Ferebee v. Sawyer,* 167 N. C., 199; *Cromwell v. Sack Co.,* 94 U. S., 351.

What is said in regard to the question of good faith applies also to the question of laches and the statute of limitations, both of which have been set up in bar of the petitioner's right to recover in this proceeding. These questions were squarely presented and decided against the defendant in the case reported in 186 N. C., 179. But even if this were not so, it appears from the record that the defendant did not decline to sell to the petitioner the lands and water rights here sought to be condemned until 24 November, 1922, and this proceeding was instituted by the issuance of summons on 2 December, 1922, only a few days thereafter. C. S., 1715 and 1716. See, also, *Yadkin River Co. v. Wissler,* 160 N. C., 269; *S. c.,* 33 Ann. Cas., 268, and Lewis on Eminent Domain, sec. 380.

There are a number of exceptions appearing on the record relating to the issue of damages, but all of these have been abandoned by the defendant.

After a careful and critical examination of the whole record, we have found no action or ruling on the part of the trial court which we apprehend should be held for reversible error. The judgment in favor of the petitioner as entered below will be upheld.

No error.

ADAMS, J., not sitting or taking part in the decision.