## Boblitt v. Commonwealth.

(Decided June 25, 1926.)

Appeal from Washington Circuit Court

1. Warehousemen—"Corpus Delicti" of Offense of Furnishing False Name of Owner or Producer of Tobacco to Warehouse is Furnishing of Such False Name (Acts 1924, c. 10, Amending and Re-Enacting Ky. Stats. 1922, Section 4814b-1).—Corpus delicti of offense of furnishing false name of owner or producer of tobacco in violation of Acts 1924, c. 10, being an amendment and re-enactment of Ky. Stats., 1922, section 4814b-1, is in furnishing to warehouse false name of owner or producer of tobacco; "corpus delicti" meaning body of offense or crime.

2. Warehousemen.—Evidence held insufficient to take to jury prosecution for furnishing to warehouse false name of owner or producer of tobacco, in violation of Acts 1924, c. 10, amending and re-enacting Ky. Stats., 1922, section 4814b-1.

3. Warehousemen—If Name of Tenant Producing on Shares and Delivering Tobacco to Warehouse was Furnished Warehouseman, Statute was Complied with (Acts 1924, c. 10, Amending and Re-enacting Ky. Stats., 1922 Section 4814b-1).—If warehouseman was furnished true name of tenants who produced tobacco on shares and actually delivered it to warehouse, Acts 1924. c. 10, amending and re-enacting Ky. Stats., 1922, section 4814b-1, requiring true name of owner or producer to be furnished, would be complied with.

W. F. GRIGSBY and MARSHALL DUNCAN for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Reversing.

The General Assembly at its 1924 session enacted chapter 10, which is on page 14 Session's Acts for that year, and entitled: "An act regulating the sales of leaf tobacco at public auction in this Commonwealth." Section 1 of the act (which in reality was but an amendment and re-enactment of section 4814b-1 of the 1922 edition of Carroll's Statutes) provided for certain prescribed duties of tobacco warehousemen where leaf tobacco was sold at public auction, among which was the posting of certain notices relative to the owners of the tobacco delivered for public sale, including the time when such notice should be posted with reference to the contemplated sale, the number of pounds so delivered, &c. The last sentence in that section says: "No tobacco shall be delivered to or received by any warehousemen for sale at public auction, unless the true names and postoffice addresses of the producer and owner of such tobacco are furnished said warehouseman by the person delivering it." Section 3 of the act prescribed certain penalties as against the warehousemen who should fail to camply with the requirements of section 1.   Section 4 says: "Any warehousemen, corporation, firm or individual who shall in said notice falsify the actual number of pounds sold or the average price thereof, or shall falsely list the name, postoffice address or number of pounds of tobacco of any producer or owner whose tobacco will that ray be offered for sale, *or shall furnish a false name or address of the owner or producer to any warehousemen,* shall be subject to indictment and upon conviction shall be fined $500.00 for each offense." (Our italics)

It will be observed that the inserted section penalizes by a fine of $500.00 not only the warehousemen for falsely listing the name and postoffice address of the producer or owner of the tobacco, but also penalizes such owner or producer if he "shall furnish a false name or address of the owner or producer to any warehousemen." The validity of the act was upheld in the case of Jewell Tobacco Warehouse Co. v. Kemper, 206 Ky. 667.

The appellant, E. A. Boblitt, was indicted in the Washington circuit court for violating the italicised provision of section 4 of the act by furnishing a false name of the owner or producer of tobacco to the Independent Tobacco Warehouse Company at Springfield,

which was a tobacco warehouse engaged in the business of conducting public sales of tobacco, and at his trial, after entering a plea of not guilty, he was convicted, followed by a judgment in favor of the Commonwealth for the attached penalty of $500.00. His motion for a new trial was overruled and he has appealed and asks a reversal of the judgment, upon the grounds that the court erred, (1), in overruling his motion for a directed acquittal, and (2), that the evidence is insufficient to authorize the conviction. The questions raised by the two grounds relied on are so closely allied that they will be considered together.

The Commonwealth proved by two tenants of defendant, who were father and son, that they grew the tobacco in question upon land either owned or possessed by defendant and it was done under a contract with him that the tobacco produced should belong one-half to defendant and the other half to the tenants; that after the tobacco was housed defendant told witnesses to strip it as soon as possible so that it might be sold and the proceeds collected; that after it was stripped and some time in January, 1925, he agreed with witnesses for them to haul the tobacco to the Independent Tobacco Warehouse at Springfield and deliver it in that warehouse; that with his knowledge and consent they did load the tobacco on two wagons after dark and hauled and delivered it to the warehouse, and that a short time thereafter defendant paid them their half of the proceeds. An employee of the Burley Tobacco Growers' Association testified that he attended the sales of tobacco at the Independent Tobacco Warehouse Company at Springfield during the period when the tobacco was supposed to have been sold and examined the notices which it put up pursuant to the requirements of the act *supra,* and that he never at any time observed the name of defendant as the owner or producer of any tobacco sold at that warehouse. He and another witness, who was an employee of the Burley Tobacco Growers' Association, also testified, in substance, that in subsequent conversations with defendant he told them that the tobacco was first moved out of the barn in which it was cured to another one so as to enable him to use the first one for his stock, and that the two tenants had disposed of the tobacco. This, in substance, was all the testimony that was introduced by the Comomnwealth or heard upon trial.

To our minds it is perfectly manifest that defendant's motion for a peremptory instruction to acquit him should have prevailed. It will be observed that the gravamen, or perhaps more appropriately speaking, the *corpus delicti* of the offense with which defendant was indicted was his furnishing to the warehousemen "a false name or address of the owner or producer" of the tobacco. In volume 14a C. J., page 1425, *corpus delicti* is defined as, "The body of the offense or crime," and in volume 16 of the same publication, page 771, it is said in defining the term that "In its primary sense it is the fact that a crime actually has been committed. As applied to a particular offense it means the actual commission by some one of the particular crime charged." On this question also see Bruce v. Commonwealth, 191 Ky. 846. In this case the *corpus delicti* consisted in furnishing to the warehouse a false name of the owner or producer of the tobacco, and there is no evidence, of substantial probative force, to establish that anyone, much less the defendant, ever furnished to the Independent Tobacco Warehouse Company of Springfield a false or any name as the owner or producer of the tobacco in question.

The only evidence that was introduced upon that issue, or that has the remotest bearing upon it, is that of the agent of the Burley Tobacco Growers' Association, wherein he testified that he did not see defendant's name listed by the warehouseman as the owner or producer of any tobacco sold thereat. But whether his failuree to so observe that fact was because the warehouseman had failed to perform *his* duties by making the proper list, or whether the witness failed to observe the name of defendant in the list by oversight, or mistake, or if the falsity of the name had been furnished to the warehouse, whether it was done by defendant, each and all rest in the barest of speculation. Moreover, the statute seems to require only the furnishing of the correct name of either the "owner" or "producer." The tenants, whose names were Tingle, in this case produced the tobacco and there were two different units (individual halves) of its ownership. It would, therefore, seem to appear that if the warehouseman was furnished the true name of the tenants who actually delivered the tobacco to the warehouse, the statute would be complied with; and in that view of the case the witness for the Commonwealth, referred to above, may have correctly read every list posted by the

warehouseman and correctly remembered that the name of defendant was never thereon as the owner of any tobacco to be sold and which was sold, and yet it may have been sold as listed in the name of the tenants, in which case defendant would not be liable. But whether so or not, it is sufficient for the purposes of this case that there is no testimony by the Commonwealth that defendant ever listed the tobacco with the warehouse either falsely or truthfully, even if there were enough circumstances to show that it was in fact listed therein and falsely so. Again, so far as the testimony goes, defendant, or the tenants, or both may have furnished the correct name to the warehouse and it failed to list, or falsely listed, it; in either of which cases neither the producer nor the owner would be guilty under the statute. Indeed, in this case the evidence fails to show that the tobacco was ever in fact sold at the warehouse in question, or at any other public sale, since the only evidence of a sale at all is the fact that defendant paid to his tenants a sum of money which he said was their part of the proceeds of the tobacco. But whether the sale from which such proceeds were realized was a public one and made at or in a warehouse is nowhere proven. It is our conclusion, therefore, that in no view of the case could it be held that the evidence was sufficient to authorize its submission to the jury, and as hereinbefore stated, the peremptory instruction to acquit defendant should have been given.

Wherefore, the judgment is reversed, with directions to grant a new trial, and for proceedings consistent with this opinion.