CLARKSON, J., concurs in result.
This is a civil action instituted by the plaintiffs, lower riparian owners, against the defendant, an upper riparian owner, to recover damages alleged to have been caused by certain negligent and wrongful acts of the defendant.
The defendant has constructed a concrete dam across Yadkin River and has erected a hydroelectric generating plant adjacent to said dam, the dam and plant being known as the Tillery Hydroelectric Generating Station. The defendant, as a public utility corporation, has been operating said plant since 1928 for the generation of electricity for distribution and sale.
Prior to his death, James A. Leak was the owner of 1,350 acres of land on the east side of Pee Dee (Yadkin) River and the islands therein formed by the thoroughfare of said river, which lands are located approximately six miles below the Tillery Dam and between the Tillery Dam and the Blewett Falls Dam.
During his life time and after the construction of the Tillery Dam, on 1 August, 1929, the said James A. Leak instituted an action against the defendant for damages on two causes of action set out in his complaint. The first cause of action was bottomed upon allegations that *Page 4 
the defendant, during a period of freshet, negligently and without warning, suddenly opened up the gates of the Tillery Dam, causing an unnatural and excessive volume of water to flow down the Yadkin River, greatly accelerating and increasing the volume of the natural flow of the river and causing the crops of the plaintiff to be damaged and destroyed to his great hurt. In his second cause of action the said plaintiff alleged that the defendant, by obstructing the natural flow of water in said river and by materially and substantially cutting off and depriving the plaintiff of the normal use of the flow of the stream and by the unreasonable use of said water by the defendant in raising and lowering the gates of the dam in disregard of the rights of the plaintiff, the lower riparian owner, causing the flow of water to be irregular and not in accordance with its normal and natural flow, and by the taking and use by the defendant of an unreasonable quantity of the normal and natural flow, the plaintiff has suffered substantial and permanent damage in that the continued operation of a ferry then being operated by the plaintiff in going to and from his lands and as a public ferry was thereby made impossible.
There was a verdict for the plaintiff on each cause of action. The amount allotted to the plaintiff on the second cause of action as permanent damages has been paid and satisfied in full by the defendant.
Thereafter, in 1934, James A. Leak died testate, devising said lands to the plaintiff Edna R. Leak Bruton, for herself and in trust for the plaintiff James A. Leak, Jr.
The plaintiffs instituted this action 19 January, 1938, to recover damages caused by the alleged negligent and wrongful operation of the Tillery Dam on or about 7 April, 1936, in wrongfully manipulating the flood water during a period of freshet and by suddenly discharging an excessive and unreasonable quantity of water so as to bring about the existence of high and exceedingly rapid and destructive water in the Pee Dee River below said dam, causing an overflow which resulted in washing away the top soil of the plaintiffs' lands and destroying its value for agricultural purposes. Plaintiffs also allege that in the construction of the Tillery Dam in the manner described, and in the manipulation of the natural flow of the stream, and by interfering with the normal and natural flow thereof, and by creating a reservoir or basin in which large quantities of water were impounded, the defendant wrongfully invaded the right of the plaintiffs to the natural and normal flow of said stream; and that by the impounding of an unreasonable quantity of water in said reservoir the defendant created, in times of freshet or high water, a highly damaging condition which unlawfully injured the property of the plaintiffs and has deprived them of the beneficial use of a large part thereof; that in the manipulation of said dam the flow of water in said stream *Page 5 
is at times practically cut off and at other times materially and injuriously accelerated and increased so that the plaintiffs are deprived of their rights to the natural flow of said stream and which has resulted in eroding and washing away and greatly damaging plaintiffs' lands.
At the conclusion of all the evidence the defendant renewed its motion to dismiss as of nonsuit first entered at the conclusion of the plaintiffs' evidence. At the time the motion was overruled and the defendant excepted. Thereafter, during the progress of the argument, the court, having decided that it was in error in overruling the motion of nonsuit, reversed itself and entered judgment dismissing the action as of nonsuit. The plaintiffs excepted and appealed.
While the complaint does not undertake to state two separate and distinct causes of action, it, in fact, alleges two causes of action and was so interpreted and treated by the court below.
The first cause of action alleges the wrongful use of the water of the Yadkin River by the defendant, an upper riparian owner, which deprives the plaintiffs of their right to the natural and uninterrupted flow of the stream and which has caused the erosion and washing away of the plaintiffs' land — a continuing wrong which amounts to a taking of plaintiffs' land or substantial interest therein.
As to this cause of action the defendant pleaded res judicata and in support thereof offered in evidence the judgment roll in the case of James A. Leak v. Carolina Power Light Co., instituted 1 August, 1929, and which was terminated at the November Term, 1930, by final judgment awarding the plaintiff therein permanent damages on his second cause of action as stated in his complaint. This plea was sustained by the court below.
From an examination of the second cause of action set out in the complaint in the James A. Leak case and of the complaint in this cause, it appears that plaintiffs' first cause of action herein and the second cause of action as set out in the James A. Leak complaint are stated in substantially identical language. The alleged wrongful conduct of the defendant, as pleaded by James A. Leak, as the basis for a second cause of action is identically the same wrong set forth and described by these plaintiffs in their complaint. As to this phase of the case the causes of action are the same. But, in the James A. Leak action he sought to recover damages for the destruction of his ferry rights only and the plaintiffs contend that the judgment in said action is not a bar to their *Page 6 
right to recover damages to the land itself. They insist, therefore, that their exception to the order of the court sustaining the plea of resjudicata should be upheld.
This exception to the ruling of the court on the plea of res judicata
presents but one question. Where two actions are based on the same cause or right of action bottomed on the same alleged wrong, does the fact that in the first action the plaintiff sought to recover a part of the damages to which he was entitled bar that plaintiff's successors in title from maintaining an identical action for the recovery of damages to the land itself?
Our decisions are to the effect that where the injuries complained of result from structures or conditions permanent in their nature and their existence and maintenance is guaranteed or protected by the power of eminent domain or because the interest of the public therein is of such exigent nature that the right of abatement at the instance of an individual is of necessity denied it is open to either plaintiff or defendant to demand that permanent damages be awarded; the proceedings in such case, to some extent, taking on the nature of condemning an easement. Rhodes v.Durham, 165 N.C. 679, 81 S.E. 938; Clinard v. Kernersville, 215 N.C. 745,3 S.E. 267. An action by landowners against a corporation possessing the right of condemnation for the maintenance of a continuing nuisance which adversely affects the value of plaintiff's land is, by demand for permanent damages either by the plaintiff or by the defendant, converted into an action in the nature of a condemnation proceedings for the assessment of damages for the value of the land or easement taken. The assessment of permanent damages and the payment thereof vests in the defendant an easement entitling it to the continued use of the property in the same manner. Clinard v. Kernersville, supra. In those cases wherein it is alleged that lands have been subjected to an additional burden, the question of negligence is not involved. Clinard v. Kernersville, supra.
The wrong complained of by James A. Leak in his second cause of action, as stated in his complaint, was continuing in its nature, resulting from the construction and maintenance of a permanent plant, the operation of which adversely affected and damaged the property of said plaintiff, a lower riparian owner. The prayer for an award of permanent damages therein converted the cause into an action for damages resulting from the wrongful taking, in part, of plaintiffs' property, which taking amounted in law to the imposition of an easement. The assessment and payment of permanent damages vested in defendant an easement in plaintiffs' land entitling it to continued use of the property in the same manner. Clinard v. Kernersville,supra, and cases there cited. *Page 7 
By the verdict and judgment in the former action the defendant is estopped to deny that by the construction, maintenance and manner of operation of its Tillery Dam it wrongfully interfered with and permanently damaged the plaintiff therein in his property right as a lower riparian owner. Likewise, the plaintiff therein and his successors in title are estopped to deny that the defendant, by payment of the permanent damages assessed, acquired an easement in plaintiffs' land, at least as to his ferry rights, permitting the continued use of its plant in the same manner without further rights on the part of James A. Leak, or his successors in title, to complain.
A judgment rendered in an action estops the parties and their privies as to all issuable matters contained in the pleadings, including all material and relevant mattes within the scope of the pleadings, which the parties, in the exercise of reasonable diligence, could and should have brought forward. Distributing Co. v. Carraway, 196 N.C. 58, 144 S.E. 535;Garrett v. Kendrick, 201 N.C. 388, 160 S.E. 349. The whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He can neither split up his claim nor divide the grounds of recovery. Power Co. v. Power Co., 188 N.C. 128,123 S.E. 312; Winslow v. Stokes, 48 N.C. 285; U.S. v. Land Co.,192 U.S. 355, 48 L.Ed., 476; Eller v. R. R., 140 N.C. 140. Where a party brings an action for a part only of the entire indivisible demand and recovers judgment, he cannot subsequently sue for another pat of the same demand. Baird v. U.S. 96 U.S. 432, 24 L.Ed., 703. As stated by Walker, J., in Eller v. R. R., supra, general rule in the law of damages is that all damage resulting from a single wrong or cause of action must be recovered in one suit. The demand cannot be split and several actions maintained for the separate items of damage. Plaintiff recovers one compensation for all loss and damage, past and prospective, which were the certain and proximate results of the single wrong or breach of duty. The rule is different where there is a continuing wrong or the wrong is repeated as in the case or a nuisance or trespass, or where there is a new trespass distinct from the original one . . . . Where there is an invasion of another's right, the cause of action is the wrong, or what we technically call `the injury,' and the consequences which immediately flow from the injury, in the way of loss or damage, are but matters of aggravation. . . . She (plaintiff who was held to be barred) could carve out as large a slice as the law allowed, but she could cut but once. No one should be twice vexed for the same cause is a maxim of the law we are not disposed to disregard and which it is well strictly to enforce." See also Lightner v. Raleigh, 206 N.C. 496,174 S.E. 272; Webb v. Chemical Co., 170 N.C. 662 *Page 8 87 S.E. 633; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 71, L.Ed., 1069; Stern v. Richies, 111 Wis. 591, 87 N.W. 555; Kline v.Stein, 46 Wn. 546, 90 P. 1041; 1 R. C. L., 341; Barcliff v. R. R.,176 N.C. 39, 96 S.E. 644; Bank v. Schruben, 125 Kan. 417
The cause of action set out in the former suit is based on the conduct of the defendant in wrongfully interfering with the rights of the plaintiff therein as a lower riparian owner by the erection of a permanent structure for use in serving the public and in interfering with the normal flow of the water of Yadkin River in connection therewith. If any damage to his land resulted therefrom said plaintiff was advertent thereto at the time. That he had in mind resulting damages to his land is made to appear by written prayers for instructions he tendered in that case in which he states in part: "That the intermittent wetting and drying of the banks by the defendant's operation of its turbines and gates causes the banks of the river to crack and facilitates erosion of same not only by the irregular flow caused by the defendant but also by floods, both natural and artificial, in said river, all to such an extent that even large trees which withstood larger floods than any on the river since the dam was constructed have been undermined and have died and fallen in the river, and that the banks of the river are deposited in the defendant's pond at Blewetts' Fall." If he considered such resulting damage more than inconsequential it was his duty to seek to recover compensation therefor in that action. His failure to do so estopped him and his privies from thereafter asserting any right thereto.
But the plaintiffs contend that the written prayers for instructions were improperly admitted and should not be considered. While it sufficiently appears without reference to the prayers for instruction that the former judgment is res judicata as to the plaintiffs' first cause of action, we may say that when the plaintiff in the former action tendered written prayers for instructions they became a part of the record and judgment roll and were admissible on the plea of res judicata as a part thereof.
There was no error in the judgment of the court in sustaining the plea of res judicata on the cause of action set out by plaintiffs for the taking of their property without compensation through the wrongful interference with the right of plaintiffs, as lower riparian owners, in the manipulation of the waters of Yadkin River. Nor was there any error in the failure of the court to find the facts on the plea of res judicata. The record in the former action being in existence is the only evidence admissible to prove its contents. Gauldin v. Madison, 179 N.C. 461, 102 S.E. 851; Little v.Bost, 208 N.C. 762, 182 S.E. 448; Gibson v. Gordon, 213 N.C. 666,197 S.E. 135; Whitaker v. Garren, 167 N.C. 658, 83 S.E. 759. That action was pursued to final judgment *Page 9 
and the jury verdict discloses the material facts. What the evidence was is unimportant. The plaintiffs cannot now pursue the same cause of action for the recovery of further damages.
Was there error in the judgment dismissing the action on the plaintiffs' second cause of action based on allegations of negligent operation of defendant's dam and floodgates during a period of excessive rains? We are of the opinion that this question likewise must be answered in the negative.
This cause of action is predicated upon the assumption that the defendant, during flood time, so unreasonably operated the floodgates to its dam that the flood water below the dam was suddenly accelerated and the quantity flowing from the dam was so excessively increased as to cause the lands of the plaintiffs to overflow, resulting in extensive damage to the lands and the crops thereon. This is a sound legal premise and, if supported by the facts, is sufficient to sustain a recovery. As was said inDunlap v. Power Co., 212 N.C. 814, 195 S.E. 43, "A lower riparian owner has the right only to insist that the water shall not be unreasonably withheld or let down by the owner above or withheld for an unreasonable length of time. The upper riparian owner has no right by virtue of his position unreasonably to interfere with the natural flow of the stream so as to give the riparian owner below a great deal more than the usual quantity of water during a part of the year, or at stated periods, and little or none during the remainder of the year or during intervals of unreasonable length . . . are riparian proprietor has a right to make all the use he can of the stream so long as he does not pollute it or divert it from its natural channel and abstract so much as to prevent other people from having equal enjoyment with himself, or does not use the same in such an unreasonable manner as to materially damage or destroy the rights of other riparian owners."
Although the works of the defendant were lawfully and rightfully in the stream and the defendant had the right to make reasonable use of the water thereof in the operation of its plant, it should be held for such damages as results from its negligent and careless manipulation of the unusual flow of water during a freshet or its negligent failure to use reasonable care in anticipating flood conditions or in failing to use reasonable diligence in guarding against any undue acceleration or retardation of flood water resulting from an unusual rainfall.
An actionable injury arises when the consequence of the detention of water by a dam is the flooding of the lands of owners either upstream or downstream. 67 C. J. (Water's), p. 702. However, the owner of a dam may permit water to flow from a dam if the water coming to the dam are neither accelerated in speed or increased in quantity, so long as ordinary care is exercised in the discharging of the water ponded behind *Page 10 
the dam. Crawford v. Cobb's Mitchel Co., 121 Ore., 628, 253 P. 3, and257 P. 16; Wixon v. Water, etc., Co., 24 Cal. 367; Wilson v. Campbell,76 Me. 94. Nothing appears to be more settled than that the owner of a dam is not bound to anticipate unprecedented storms or rainfalls. Palmyra v.Woolen Co., 99 Me. 134, 58 A. 674; Radburn v. Lumber Co., 83 Wn. 634,145 P. 632; and is not liable for damages resulting from extraordinary storms and floods. Steels Co. v. law, 224 Ala. 667,141 So. 641; Duncan v. Power Co., 250 Mass. 228, 145 N.E. 427; Town ofBennington v. Fillmore Slade, 98 Vt. 405, 130 A. 137; City ofPortsmouth v. Weiss, 145 Va. 94, 133 S.E. 781. Rector v. Power Co.,180 N.C. 622, is to like effect. But where the negligence of the defendant in the operation of its plant during unprecedented and unforeseeable storm or rainfall is a contributing factor in producing injury — that is when the injury resulted from a combination of the defendant's negligence acting in concert with some natural force such as an unprecedented storm (Comrs.v. Jennings, 181 N.C. 393) the defendant is not relieved from liability, since an act of God which exculpates the owner of a dam must be such an act as constitutes the sole cause of the injury. Water Works Co. v. Holliday,214 Ky. 762, 45 S.W.2d 9; Walsh v. Copper Mining Co., 66 Mont. 592,214 P. 641.
Likewise, a defendant power company is required to exercise ordinary care in anticipating flood conditions from an ordinary freshet such as might be reasonably expected or foreseen and to use reasonable care in the manipulation thereof and in guarding against any undue acceleration or retardation of the flood water. It may be held accountable for any damages for its failure to exercise such care. However, in determining whether the owner of a dam has failed to exercise ordinary care to protect the rights of a lower riparian owner due regard must be had for its correlative duty to protect upper riparian owners against any undue retardation of the flood water. The owner must pay due regard to the rights of the upper, as well as of the lower, riparian owner.
From a consideration of all the evidence offered in the light most favorable to the plaintiffs the following facts may be adduced:
(1) The defendant's power plant and dam is located 4.8 miles above the point where Rocky River empties into Yadkin (Pee Dee) River and another smaller stream known as Clark Creek empties into Yadkin River about 2,000 feet below the dam. The land of the plaintiffs is located approximately 1 miles below the mouth of Rocky River.
(2) The rainfall in the water sheds or basins of Yadkin and Rocky Rivers which produced the conditions about which the plaintiffs complain, began on 1 April, 1936, and continued with varying degrees of intensity through 7 April, 1936; *Page 11 
(3) There have been freshets prior to the construction of the dam producing a larger flowage of water;
(4) There was an extensive rise in the water or Rocky River and in Yadkin River on the morning of 7 April. the rise in Pee Dee River was from 8 to 10 feet between 9 a.m. and 2 p.m. on that day, with a total rise of 11 feet during the day. Rocky River rose 32 feet (from its bed) and held a sustained height of 30 feet for approximately 30 hours. The crest of the rise of Rocky River some distance up the river occurred about 8 a.m. and on plaintiffs' land on Pee Dee River about 11 a.m. on the morning of the 7th;
(5) At the rate the water was flowing it took two to four hours for it to pass from the defendant's dam to the plaintiffs' land;
(6) The land of plaintiffs began to overflow on the late afternoon or night of 6 April and was completely inundated on the 7th. The water began to recede on the 8th and the river was within its banks on the 9th;
(7) The extent of the flow and the rapidity of the water caused considerable damage to the lands of plaintiffs;
(8) If a maximum number of the gates to the defendant's dam are opened suddenly it will cause a high crest of water which will adjust itself in 6 or 8 hours.
(9) The total rainfall beginning 1 April was considerably in excess of the rainfall which occurred in 1928 but if the rainfall is considered from the 4th to the 7th there was less;
(10) On 6 April defendant had 13 or 14 of its gates open and on 7 April it had 14 gates open; and,
(11) Gates such as are used by the defendant are a necessary part of the construction of that type of dam and the type of dam used by the defendant is in common use in the South.
In addition, the plaintiffs' witness Holland, who was tendered and examined as an expert and who had no personal knowledge of the condition existing on the day the lands of the plaintiffs were flooded, testified at considerable length as to the rainfall, the flowage of the streams, the volume of water discharged by Rocky River and like matters, all of which testimony was based on records maintained by the Federal Government at its several rainfall and river gauge stations. He further testified that during freshets water would naturally flow more rapidly since the dam was built than before; that the damage was caused by the heavy rains and the fast rise in the water; that the dam would naturally feed out water more rapidly during flood stage; that if the pond is maintained at the same level after the gates are open it is not discharging any more water than comes in but just the same quantity that is coming in — nothing coming out but flood water — and that in giving his testimony he did not take into consideration the storage basins up the Pee Dee. He then stated that in his opinion the rapidly rising *Page 12 
flood which produced the overflow on the lands of plaintiffs was caused by "the opening of a large number of gates in the dam of the defendant and particularly releasing suddenly a large volume of water, a volume which I can't measure, haven't attempted to measure by the opening of the gates, but which I have attempted to measure and have measured with a fair degree of accuracy by starting at the station below the dam and working back."
The witness was qualified and permitted to testify as an expert. His statement as to the cause of the flooding of the land, if supported by evidence, is sufficient to take the cause to the jury. If not supported by evidence, it is a mere surmise or conjecture.
While the plaintiffs offered evidence tending to show that on the afternoon of the 6th there were 13 or 14 gates open and that on the 7th 14 gates were open, they offered no evidence as to the manner in which the gates were opened — whether one at a time, gradually, or all at one time. As bearing on this, however, the evidence of the plaintiffs does disclose that at all times while the gates were open water was flowing over the top of the unopened gates, thus showing that the defendant was not discharging any considerable amount of water in excess of that which was coming in.
As there is a total absence of evidence in the record that the defendant released suddenly a large volume of water either on the 6th or on the 7th, the day of the flood, we are compelled to the conclusion that the opinion evidence of the plaintiffs' expert witness is unsupported by evidence and amounts to nothing more than speculation.
In support of this conclusion it may be well to not that the evidence of the defendant and its charts disclose that the defendant began to release the water before it had completely reached the crest of the dam and that it so controlled its gates that after the water began to flow over the dam the pond was maintained at approximately the same level until the water below the dam receded within the banks of the river.
But the plaintiffs insist that as the judge did not grant the motion of nonsuit when made at the conclusion of all the evidence he was without power to do so thereafter. This position cannot be sustained. The matter wasin fieri until verdict was rendered. Batson v. Laundry Co., 202 N.C. 560,163 S.E. 600; Godfrey v. Coach Co., 200 N.C. 41, 156 S.E. 139;Price v. Ins. Co., 200 N.C. 427, 157 S.E. 132, and 201 N.C. 376,160 S.E. 367, Lee v. Penland, 200 N.C. 340, 157 S.E. 31.
A careful perusal and consideration of all the evidence leads us to the conclusion that the judgment below must be
Affirmed.
CLARKSON, J., concurs in result. *Page 13